M. Douglas Flahaut (SBN 245558)
Dylan J. Yamamoto (SBN 324601)
**ECHO PARK LEGAL, APC**
2210 Sunset Blvd., #301
Los Angeles, CA  90026
Telephone:      (310) 709-0658
Email:  df@echoparklegal.com
          dylan@echoparklegal.com
Counsel for PI HS, LLC

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In re: | Lead Case No.: 2:26-bk-14338-BR |
| **SAICP Hotel, LLC** | Chapter 11 |
| Debtor. | **OMNIBUS OPPOSITION AND RESERVATION OF RIGHTS RE (1)** *DEBTOR'S EMERGENCY MOTION FOR ORDER AUTHORIZING DEBTOR TO PAY PREPETITION NON-INSIDER HOTEL STAFF WAGES AND RELATED EXPENSES*; **AND (2)** *DEBTOR'S MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363* |
| | **Hearing:** |
| | **Date:** May 13, 2026 **Time:** 3:00 p.m. **Location:** Courtroom 1668 (Via ZoomGov) 255 E. Temple St. Los Angeles, CA 90012 |

- 1 -

**TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY JUDGE; AND ALL INTERESTED PARTIES:**

Secured creditor PI HS, LLC ("PI HS") submits this Omnibus Opposition and Reservation of Rights to the above-captioned Debtor's (1) *Debtor's Emergency Motion for Order Authorizing Debtor to Pay Prepetition Non-Insider Hotel Staff Wages and Related Expenses* [Dkt. No. 21] (the "Wage Motion"); and (2) *Debtor's Motion for Interim and Final Orders Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. § 363* [Dkt. No. 22] (the "Cash Collateral Motion," and with the Wage Motion, the "Motions") and represents as follows:

A.      **INTRODUCTION**

PI HS holds a note secured by a deed of trust and assignment of rents. As of the petition date PI HS is owed approximately $38,367,094.01. In addition to PI HS's secured note, deed of trust, and assignment of rents, the Debtor obtained funds through a commercial property assessed clean energy (C-PACE) program through Nuveen with a notice of assessment lien recorded on the property such that those obligations run with the land and have equal priority with the property taxes and are repaid through annual property tax assessments.

The Debtor has not yet filed its schedules. However, even at this early stage, PI HS has serious concerns regarding the viability of this case. First, as of the petition date, the Debtor had been in default with PI HS since approximately September 17, 2024, and the entire balance has been due since May 31, 2025. Second, while the Debtor did not check the box indicating it was a Single Asset Real Estate case, PI HS believes that the Debtor does nothing more than own a piece of commercial real property and collect rents with all operations appearing to be performed by non-debtor management company Aimbridge Hospitality, LLC ("Aimbridge"). Third, PI HS believes the Debtor's claimed $95 million valuation is not supported by the market, and therefore, PI HS has serious concerns that it is not adequately protected and is the process of obtaining its own valuation and, if appropriate, will be filing a motion for relief from stay shortly.

All that said, PI HS does not want to see all hotel operations cease and recognizes the benefit of preserving the Debtor's going concern value, to the extent possible. Curiously, however, even though Aimbridge appears to be responsible for all hotel operations, there is no declaration from

someone at Aimbridge regarding the hotel's operations and little discussion or evidence regarding the key terms of the management agreement between the Debtor and Aimbridge.  Therefore, on this record, the Motions are deficient and do not provide the crucial information necessary to evaluate whether the relief requested in the Motions is in the best interests of the estate and creditors or otherwise permissible under the Bankruptcy Code.

Either: (a) the Debtor does not need the requested authorization to pay wages and use cash collateral because Aimbridge has the obligations and "employs" the workers, or (b) the Debtor does need the requested authorizations, in which case, these motions do not provide crucial information about the Debtor's relationship with Aimbridge, the nature of the Debtor's direct obligations, which, if any, pre-petition management obligations are being paid indirectly, whether the Debtor is effectively assuming or partially performing an executory contract without satisfying Section 365, or whether the budgeted amounts include impermissible pre-petition accounts payable.

Therefore, the Court should at minimum require the Debtor to provide the information necessary to analyze the requested relief.

**B.**      **THE MOTIONS FAIL TO FULLY EXPLAIN THE AIMBRIDGE RELATIONSHIP AND THEREFORE THE COURT DOES NOT HAVE ENOUGH INFORMATION TO KNOW WHETHER THE RELIEF IS APPROPRIATE.**

The Wage Motion states that "Aimbridge Hospitality, employs 75 full-time and 20 part-time, non-insider W-2 employees that perform the day-to-day functions necessary for Debtor's operations." Wage Motion, 4:9-12.  Notwithstanding that the employees are not the Debtor's employees; the Debtor states these Aimbridge employees are apparently paid from an account in the name of the Debtor SAICP.  Wage Motion, 4:14-15.[1]  Although the funds to pay the employees are obviously earned from hotel revenue, the Debtor does not appear to have any obligation to pay these employees because they are not employees of the Debtor, and it is unclear under what theory

---

[1] If employees of Aimbridge have historically been paid from a Debtor account, it raises the question of what else might have been paid from a debtor account since the petition was filed on April 30, 2026.  Obviously, if the Debtor or Aimbridge has been using Debtor funds to pay pre-petition debts in the past two weeks, that could be grounds for dismissal, conversion, or appointment of a chapter 11 trustee.

these Aimbridge employees could make a claim against the estate.    As presented, the Motions do not permit the Court to determine:

- Whether the wage obligations (or the other obligations described in the Cash Collateral Motion) are Debtor obligations or Aimbridge obligations;

- Whether the requested payments will be treated as reimbursements to Aimbridge or direct payments to third-parties on account of Aimbridge obligations;

- Whether management fees are embedded in the payroll and/or other Budget line items (there does not appear to be a line item for management fees due to Aimbridge in the Budget);

- Whether pre-petition liabilities (either of Aimbridge, the Debtor, or both) are being paid.

It is also unclear why, if Aimbridge is the employer of all employees and contractors, such payment is made from an account in the Debtor's name.  This also raises the question of which Aimbridge expenses are to be paid from the Debtor's account, or whether Aimbridge and the Debtor are co-signatories on certain accounts.  Indeed, if Aimbridge is in control of Debtor accounts, there is no discussion of what controls exist to protect the Debtor's funds from misuse.[2]  Indeed, management fees to Aimbridge do not appear to be a separate line item in the budget, and therefore, it is not clear whether the Debtor intends to pay management fees to Aimbridge post-petition.  If Aimbridge's management fees are built into the various line items in the budget, it is not clear what safeguards are in place to ensure that pre-petition accrued management fees that may have been due Aimbridge as of the petition date are not paid to Aimbridge until and unless the management contract is assumed.

In short, currently there is not enough information and evidence in the record to support the Motions.

---

[2] No cash management motion has been filed that might explain the situation with respect to accounts and request a necessary deviation from the US Trustee requirement that all pre-petition Debtor accounts be closed and new DIP accounts opened.

**C.    THERE IS NO EVIDENCE FROM AN AIMBRIDGE EMPLOYEE OR REPRESENTATIVE REGARDING THE HOTEL'S OPERATIONS.**

The only declarations in support of the Motions are signed by Jia Liu, who asserts that she is "the Manager" of the Debor but evidently has no connection to Aimbridge and is in no way responsible for the hotel's operations because Aimbridge (and not the Debtor) performs such operational and management functions. Thus, while the hotel's operations are discussed along with a proposed budget, it is unclear how Ms. Liu would have the necessary foundation and personal knowledge to know what Aimbridge needs to operate the hotel. Better evidence would presumably come from someone at Aimbridge as Aimbridge is purportedly responsible for managing all operations of the hotel, including:

- The hotel's operational requirements and accounts payables;
- Staffing and employee issues;
- The payroll process;
- How management fees are calculated, what the management fees are, and where they can be found in the Debtor's budget attached to the Cash Collateral Motion as Exhibit 1;
- How Aimbridge is reimbursed by the Debtor; or
- What expenses are actually necessary to preserve the Debtor's operations.

Perhaps more importantly, the Aimbridge management agreement is not attached to either Motion or otherwise meaningfully explained in the Motions. Consequently, there is insufficient evidence in the record to evaluate:

- The executory status of the management agreement;
- The Debtor's reimbursement obligations, if any;
- The management fee structure;
- Any pre-petition defaults under the agreement, and related cure obligations, if any;
- Which party or parties has authority over the bank accounts;
- Whether all or some of the hotel revenue belongs to Aimbridge;
- Whether Aimbridge has rights to setoff or reimbursement; and

- 5 -

- Whether any pre-petition obligations are being satisfied directly or indirectly.

In other words, the Debtor appears to be asking this Court to authorize ongoing performance of a material hotel management agreement without providing the key terms of such agreement. For this reason, PI HS lacks the ability to fully evaluate whether it is appropriate for Secured Creditor's cash collateral to be used as requested in the Motions.

**D.      THE DEBTOR'S PROPOSED BUDGET IS VAGUE AND LACKS NECESSARY DETAILS.**

The Debtor's Budget contains only a handful of vague line items and does not appear to include a line item for Aimbridge's management fee. This raises the questions (a) how Aimbridge is paid, and (b) where that payment is represented in the Budget, including whether it is embedded elsewhere in the Budget without explanation. For example, is the payroll marked up to include the management fee, or is it captured in accounts payable? Setting aside the issues with how the Budget is presented, there is another question, raised earlier herein, of how the management fee is calculated and how much the Debtor may have owed Aimbridge as of the petition date.

Second, the accounts payable line item in the Budget does not identify which accounts payable are pre-petition (if any) versus post-petition. The Budget merely shows a few broad categories and projected cash outflows, but does not explain whether such outflows are for new obligations incurred after the petition date or unpaid pre-petition obligations, which generally cannot be paid absent Court approval. Thus, the Debtor has not shown any controls for preventing improper payments and misuse of PI HS's cash collateral. Specifically, potential improper payments might include expenses believed to be unrelated to Debtor operations, comped rooms and food/beverages, or expenditures on behalf of Aimbridge. Therefore, the Court lacks an evidentiary basis to conclude that PI HS's cash collateral is adequately protected.

**E.      RESERVATION OF RIGHTS.**

PI HS will attempt to negotiate with Debtor's counsel and counsel for Aimbridge in an effort perhaps to reach a cash collateral stipulation. Indeed, based on PI HS's understanding of the situation, the stipulation should likely provide that Aimbridge provide regular budgets and

accounting to PI HS, and, after reserving for necessary working capital for operations, Aimbridge should pay all remaining proceeds over to PI HS pursuant to its assignment of rents clause.

Notwithstanding that, PI HS reserves all rights whatsoever regarding both Motions.  And to the extent that any relief is granted at the May 13, 2026 hearing, PI HS would request that such relief be interim in nature and that PI HS (and other interested parties) be given an opportunity to further object to any future final relief the Court might be inclined to grant on the Motions.

**F.        CONCLUSION.**

For the foregoing reasons, Secured Creditor PI HS respectfully requests that the Court deny the Motions on this record or, to the extent that limited relief is granted, that such relief be interim in nature and that a continued hearing or hearings be scheduled with all rights of PI HS reserved.

DATED: May 12, 2026                                    **ECHO PARK LEGAL, APC**

/s/ *Dylan J. Yamamoto*
M. Douglas Flahaut
Dylan J. Yamamoto
Counsel for PI HS, LLC

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: Echo Park Legal, APC, 2210 Sunset Blvd., #301, Los Angeles, CA 90026.

A true and correct copy of the foregoing document entitled (*specify*): <u>RESERVATION OF RIGHTS RE (1) DEBTOR'S EMERGENCY MOTION FOR ORDER AUTHORIZING DEBTOR TO PAY PREPETITION NON-INSIDER HOTEL STAFF WAGES AND RELATED EXPENSES; AND (2) DEBTOR'S MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363</u> will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**.  **<u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document.  On May 12, 2026, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

x Service information continued on attached page

**2.  <u>SERVED BY UNITED STATES MAIL</u>**:
On (date), I *caused to be* served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.      <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u>** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date), I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 5/12/2026 | Dylan J. Yamamoto | /s/ *Dylan J. Yamamoto* |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                    **F 9013-3.1.PROOF.SERVICE**

## <u>PROOF OF SERVICE CONTINUED PAGE</u>

**1.  <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):</u>**


- **Michael Jay Berger**    michael.berger@bankruptcypower.com, yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com
- **Steven P Chang**    schang@slclawoffice.com, schang@spclawoffice.com,assistant1@spclawoffice.com,attorney@spclawoffice.com;g9806@notify.cincompass.com;changsr75251@notify.bestcase.com
- **M Douglas Flahaut**    df@echoparklegal.com
- **Ron Maroko**    ron.maroko@usdoj.gov
- **Jennifer L Nassiri**    JNassiri@sheppardmullin.com, xmaurice@sheppardmullin.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **Dylan J Yamamoto**    dylan@echoparklegal.com